**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| GREG HRASOK, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KRATON CORPORATION, KEVIN M. FOGARTY, and STEPHEN E. TREMBLAY,<br><br>Defendants. | Case No: 4:18-cv-591<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Greg Hrasok ("Plaintiff"), by Plaintiff's undersigned attorneys, individually and on behalf of all other persons similarly situated, alleges the following based upon personal knowledge as to Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Kraton Corporation ("Kraton" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1. This is a federal securities class action brought on behalf of a class consisting of all persons and entities, other than Defendants and their affiliates, who purchased or otherwise acquired publically traded securities of Kraton from October 25, 2017 through February 21,

1

2018, inclusive (the "Class Period"), seeking to recover compensable damages caused by Defendants' violations of federal securities laws (the "Class").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. § 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to § 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

4. Venue is proper in this District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b), as Defendants conduct business and the Company is headquartered in this District.

5. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the attached Certification, acquired Kraton securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

7. Defendant Kraton produces and sells styrenic block copolymers and other engineered polymers in the Americas, Europe, the Middle East, Africa, and the Asia Pacific. Kraton is a Delaware corporation which produces Cariflex, a polyisoprene product, in its Paulinia, Brazil manufacturing facility. Kraton's principal executive offices are located at 15710

John F. Kennedy Blvd, Suite 300, Houston, TX 77032. Kraton securities trade on the NYSE under the ticker symbol "KRA."

8. Defendant Kevin M. Fogarty ("Fogarty") has been the Company's Chief Executive Officer ("CEO") and President since January 14, 2018.

9. Defendant Stephen E. Tremblay ("Tremblay") has been the Company's Chief Financial Officer ("CFO") since January 21, 2008 and serves as its Executive Vice President.

10. Defendants Fogarty and Tremblay are sometimes referred to herein as the "Individual Defendants."

11. Each of the Individual Defendants:

   a. directly participated in the management of the Company;

   b. was directly involved in the day-to-day operations of the Company at the highest levels;

   c. was privy to confidential proprietary information concerning the Company and its business and operations;

   d. was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

   e. was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

   f. was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

   g. approved or ratified these statements in violation of the federal securities laws.

12. Kraton is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

13. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Kraton under *respondeat superior* and agency principles.

14. Defendant Kraton and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements Issued During the Class Period

15. On October 25, 2017, the Company filed a Form 10-Q for the quarter ended September 30, 2017 (the "3Q 2017 10-Q") with the SEC, which provided the Company's third quarter 2017 financial results and position. The 3Q 2017 10-Q stated that the Company's disclosure controls and procedures were effective as of September 30, 2017. The 3Q 2017 10-Q was signed by Defendants Fogarty and Tremblay. The 3Q 2017 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Fogarty and Tremblay attesting to the accuracy of the financial statements, effectiveness of internal controls, and that all fraud was disclosed.

16. The 3Q 2017 10-Q discussed internal controls over financial reporting, stating in relevant part:

> We acquired Arizona Chemical on January 6, 2016 and are currently in the process of integrating Arizona Chemical into our existing internal controls over financial reporting. Except for any changes in internal controls related to the integration of Arizona Chemical and its subsidiaries, there were no changes in our internal control over financial reporting during our three months ended September 30, 2017 which were

    identified in connection with management's evaluation required by paragraph (d) of Rules 13a-15 and 15d-15 under the Securities Exchange Act of 1934 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

17. On October 25, 2017, the Company held a conference call regarding its 3Q 2017 earnings. During the call, Defendants stated the Company was already producing Cariflex, a polyisoprene product, at its plant in Brazil, that it was transitioning customers to that new capability, and that the product was available for customers:

> **[Analyst:]** Can you elaborate on where you stand on the different pieces of your cost savings program including when you completed or expect to complete the construction of each of your global projects and also where capacity utilization is currently at each of the projects relative to where you expected to operate on a normalized environment?
>
> **Kevin Fogarty**: Steve, you want to jump in and take that one.
>
> **Steve Trembley**: *Jason, with the capital that we are deploying in Polenia which is what we refer to as our direct connect project which is to improve the overall capability of our Cariflex portfolio, that CapEx is deployed and we are currently in the process of continuing to transition customers to that new capability.*
>
>      \*  \*  \*
>
> **[Analyst:]** Okay. And just as a follow-up to that answer. It sounds like you're still in the very early stages of ramping up the projects that are completed. It sounds like Polenia and the JV and Taiwan is completed, but you're kind of in early stages of that. Is that correct?
>
> **Kevin Fogarty:** I wouldn't say early stage necessarily. *I mean early stage in terms of significant volumes, commercial volumes to customers. Yes. But the Cariflex opportunity in Polenia is much further along in the early stages where we got commercial product that's available for customers.* Again, the CapEx is fully deployed. The facility in Taiwan, construction was completed in the first quarter. We've got a number of a great slates at that facility is going to produce which is our most demanding grades in our portfolio – on our HSBC portfolio. A number grades have already been supplied to customers. We've had very nominal commercial sales this year. We expect to have significantly more sales next year.

(emphasis added).

18. The statements referenced in ¶¶15-17 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts

5

pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Kraton was transitioning customers to Brazilian-produced Cariflex even though certain customers had already rejected that product; (2) Kraton's Brazilian-produced Cariflex was available to customers when in fact certain customers had already rejected that product; (3) Kraton lacked effective internal controls over financial reporting; and (4) as a result, Defendants' statements about Kraton's business, operations and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## The Truth Emerges

19. On February 21, 2018, the Company filed an annual report on Form 10-K for the fiscal year ended December 31, 2017 (the "2017 10-K") with the SEC, which provided the Company's annual financial results and position. The 2017 10-K was signed by Defendants Fogarty and Tremblay. The 2017 10-K contained signed SOX certifications by Defendants Fogarty and Tremblay attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

20. The 2017 10-K reported that certain customers had issues with its Brazilian-produced Cariflex during the fourth quarter, which negatively impacted earnings, stating in relevant part:

**Year Ended December 31, 2017 Compared to Year Ended December 31, 2016**

> Revenue for the Polymer segment was $1,199.7 million for the year ended December 31, 2017 compared to $1,024.7 million for the year ended December 31, 2016. Sales volumes were 333.7 kilotons for the year ended December 31,

6

2017, an increase of 9.5 kilotons, or 2.9%. Performance Products volumes increased 2.9%, Specialty Polymers volumes increased 3.6% (excluding the effect of the sale of the compounding business, sales volumes would have increased 7.2%), and Cariflex volumes increased 0.4%.

With respect to revenue for the Polymer segment product groups:

- *Cariflex*™ revenue was $168.3 million for the year ended December 31, 2017 compared to $171.0 million for the year ended December 31, 2016.

- *Specialty Polymers* revenue was $389.9 million for the year ended December 31, 2017 compared to $340.3 million for the year ended December 31, 2016. The revenue increase was primarily driven by higher average selling prices resulting from higher raw material costs and to a lesser extent increased sales volumes.

- *Performance Products* revenue was $640.3 million for the year ended December 31, 2017 compared to $513.1 million for the year ended December 31, 2016. The increase was primarily driven by higher average selling prices resulting from higher raw material costs and to a lesser extent increased sales volumes.

For the year ended December 31, 2017, the Polymer segment operating income was $117.4 million compared to $77.9 million for the year ended December 31, 2016.

For the year ended December 31, 2017, the Polymer segment generated Adjusted EBITDA (non-GAAP) of $223.0 million compared to $183.1 million for the year ended December 31, 2016. The increase in Adjusted EBITDA was primarily due to improved unit margins, which were driven by higher selling prices and the impact of cost reduction initiatives.

***In the third quarter 2017, we initiated a new manufacturing process for our Cariflex product at our manufacturing facility in Paulinia, Brazil. Although material produced using this new process met technical specifications, during the fourth quarter 2017, some customers notified us that they were experiencing processing issues with the material. While the majority of material shipped in the fourth quarter is being used, the degree of issues noted by our customers varied, and in certain cases the material was returned to us for evaluation. We have implemented a number of manufacturing changes in an effort to address these issues going forward and these changes appear to be lessening the processing issues.*** The negative financial impact to our fourth quarter 2017 operating income including our Adjusted EBITDA was $7.6 million. See *Item 6. Selected Financial*

7

*Data* for a reconciliation of U.S. GAAP operating income to Adjusted EBITDA (non-GAAP).

(emphasis added).

21. On this news, the Company's shares fell $7.69 per share or over 15% to close at $43.10 per share on February 21, 2018, damaging investors.

22. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

23. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Kraton securities publically traded on NYSE during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

24. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Kraton securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Kraton or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

25. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

26. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

27. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    a. whether the federal securities laws were violated by Defendants' acts as alleged herein;

    b. whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Kraton;

    c. whether the Individual Defendants caused Kraton to issue false and misleading financial statements during the Class Period;

    d. whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

    e. whether the prices of Kraton securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

    f. whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

28. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

29. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

   a. Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

   b. the omissions and misrepresentations were material;

   c. Kraton securities are traded in an efficient market;

   d. the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

   e. the Company traded on the NYSE and was covered by multiple analysts;

   f. the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

   g. Plaintiff and members of the Class purchased, acquired and/or sold Kraton securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

30. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

31. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violations of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

32. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

33. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

34. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Kraton securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Kraton securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

35. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Kraton securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Kraton's finances and business prospects.

36. By virtue of their positions at Kraton, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

37. Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of Kraton securities from their personal portfolios.

38. Kraton showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Kraton, the Individual Defendants had knowledge of the details of Kraton's internal affairs.

39.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Kraton. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Kraton's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Kraton securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Kraton's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Kraton securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

40.     During the Class Period, Kraton securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Kraton securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Kraton securities was substantially lower than the prices paid by Plaintiff and

the other members of the Class. The market price of Kraton securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

41. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

42. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II
### Violations of Section 20(a) of The Exchange Act
### Against The Individual Defendants

43. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

44. During the Class Period, the Individual Defendants participated in the operation and management of Kraton, and conducted and participated, directly and indirectly, in the conduct of Kraton's business affairs. Because of their senior positions, they knew the adverse non-public information about Kraton's current financial position and future business prospects.

45. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Kraton's business practices, and to correct promptly any public statements issued by Kraton which had become materially false or misleading.

46. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press

releases and public filings which Kraton disseminated in the marketplace during the Class Period concerning the Company's business, operational and accounting policies. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Kraton to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Kraton within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Kraton securities.

47. Each of the Individual Defendants, therefore, acted as a controlling person of Kraton. By reason of their senior management positions and/or being directors of Kraton, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Kraton to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Kraton and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

48. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Kraton.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as her reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: February 26, 2018        Respectfully submitted,

**STECKLER GRESHAM COCHRAN PLLC**

/s/ R. Dean Gresham
R. Dean Gresham
Texas Bar No. 24027215
12720 Hillcrest Rd, Suite 1045
Dallas, Texas 75230
Telephone: (972) 387-4040
Facsimile: (972) 387-4041
Email: dean@stecklerlaw.com

-and-

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (not admitted)
Laurence M. Rosen, Esq. (not admitted)
275 Madison Avenue, 34th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
         lrosen@rosenlegal.com

Counsel for Plaintiff